We have three cases and three arguments for this morning's agenda. We probably won't take a break, but we may play that by ear. The first case is U.S. v. Winder, 17-8075. Are you ready, Counsel? Good morning, Your Honors, and Counsel. John R. Ceci, Assistant Federal Court Defender, appearing on behalf of the appellant, Ronald Winder. Your Honors, the sole question in this case is whether Wyoming's felony interference with an officer's statute qualifies as a crime of violence under the guidelines. It doesn't for two reasons. The first is that it's satisfied by causing de minimis pain, and the second is that it's satisfied by causing any impairment of a physical condition. And so I want to just briefly address a few points with respect to both reasons this morning. Now, you'll recall that the statute here criminalizes causing bodily injury, which is a term that's defined by Wyoming as, among other things, pain. But as the Fifth Circuit recognized this summer, rather than I backtrack for a second, the Wyoming Supreme Court has also held that no particular degree of pain is required to satisfy the statute. And as the Fifth Circuit held this summer in the Burris case cited in our reply brief, that's less than the level of violent force that's contemplated by Curvis Johnson. That is, there's a category of minor injuries and minor pain that, while they may be more than the mere offensive touching that was rejected in Curtis Johnson, they don't rise to the level of violent force. This case squarely presents that area between offensive touching and violent force. Now, without a doubt, Curtis Johnson does say at one point in the decision that violent force means force capable of causing pain and injury. But that can't be read to mean any and all pain or injury. And I think we know that for three reasons. The first is that the Castleman, and four years later, after Curtis Johnson and Castleman, the Court expressly reserved that very question. And it would be a really strange world in which Curtis Johnson could be said to definitively answer a question that the Court expressly reserved four years later. But we adopted Justice Scalia's concurrence in Castleman, did we not? I don't read any case of this Court adopting the concurrence. I think Harris references the concurrence, describes it. What's the footnote say? What's that? What's the footnote say? It says we agree with Justice Scalia's concept of the quantum of pain, the quantum of injury required. Did we not say that? I don't recall that, Your Honor. I defer to your reading of that.  It could make a difference. But I think Harris is, of course, you know, a robbery is a case about robbery. It's a case where the Supreme, where the State Supreme Court there, you know, caught, was describing a case, violent force, a crime whose, the grabment of which was violence. And it was a statute that involved causing force. I'm sorry, causing, not causing bodily injury, but of employing force. I'll read you the footnote. We find Justice Scalia's concurrence in Castleman persuasive on the quantum of force required to constitute violent force. And the statute that he found satisfied the requirement of violent force is almost identical. Almost every word in the Wyoming statute appears in the statute addressed in Castleman. So how do you get around that? That's your biggest hurdle, I would think. I think that the Tennessee, the Tennessee statute at issue in, at issue in Castleman, right, I think is actually a little different than the one in Wyoming, right, in that it has greater specificity. And arguably even a higher threshold. What also is absent, I think, in the underlying facts of Castleman is any indication from the Tennessee Supreme Court, right, that literally any amount of pain counts. And so that even if there is, even if we accept that, even if we accept those descriptions in Castleman, even if we accept, even if we accept Curtis Johnson's descriptions that slap in the face, there's still a category between that level of force, of violent force, and the de minimis pain that's contemplated by the Wyoming Supreme Court's express and repeated admonishments in its cases that anything goes. I think that, I think this Court's approach in Onoveros is also instructive here, too, right, in the sense that the analytical framework that they laid out, that the panel laid out in that case, was that the main question on Onoveros obviously was the, the, whether or not indirect force counted, right, and it overruled Perkins-Vargas and Rodriguez-Enriquez in doing so, but then it went to the final part of the analysis, what it described, which is, okay, so indirect force counts as physical force, but does that mean it counts as violent force? And the Court in Onoveros, the last paragraphs of that decision go into the analysis, and the Colorado statute at issue there, the second-degree assault statute, involved a serious bodily injury. And so the Onoveros Court had no problem concluding that it necessarily implied the use of violent force. But if all bodily injury, if causing any bodily injury counted, there would be no need for that analytical step. The simple act of physical force being employed in causing bodily injury would answer the question. And so I think that the Onoveros framework, which has been applied consistently since that case came down, really answers this Court, the question that just because something causes bodily injury does not definitively answer the question. And the line is ultimately pretty easy to draw, I think. We know from Curtis Johnson that mere offensive touching doesn't count. We know from Onoveros that serious bodily injury or use of a dangerous weapon is going to count. And then if a State statute criminalizes mere bodily injury, we just, we look to the State statute and we look to the State courts. And that's just the categorical approach. So I don't think there's anything unusual or anything untoward about what's being proposed here. It's what the courts are already doing. And, again, I think that the Wyoming statute is unusually and uniquely low in the threshold. And, again, the Wyoming Supreme Court has in at least three cases reiterated that Flores, Grimes, Mascarenas, the cases cited in our briefs, that there is no particular pain required. Anything counts. The — No particular level of pain. No particular level of pain, sure, yeah. Now, I think the other, I think, sort of moving to the second side of things, I think we can sort of put aside pain for a moment and look at the other part of the statute, which is that this bodily injury is also defined as impairment of any physical condition. And that's not a term that's defined statutorily or has been interpreted by the Wyoming Supreme Court as far as either I or the government have been able to determine. It's a term that is quite broad. And whether that is de minimis or otherwise, the Wyoming Supreme Court has said that any de minimis or any particular level of impairment of a physical condition also satisfies the statute. And so Wyoming, like most jurisdictions, when a term isn't defined, right, we look to the plain language and the plain meaning of the term, the usual course. And that's impairment of any physical condition is incredibly broad and, again, would rise to a level of result that doesn't necessitate the violent force that's contemplated in Curtis Johnson. You know, we've obviously, you know, provided some examples in the brief, the shining flashlights in an eyes, but, you know, more or less things like grabbing an officer's arm, you know, might count. Perhaps drugging an officer with a sleeping pill doesn't cause pain, right, impairing a state of awakeness. There's a lot of hypotheticals that you can spin out, but they're not necessarily fanciful, right, because they fit under the plain language of the statute. And so I think that that sort of falls into the framework that the Court laid out in the Tiddy's case, which is that essentially if the statute answers it, we're not in the realm of, it's a realistic, we're not in the realm of hypothetical, right? If the State Supreme Court has said any level of impairment, any level of pain counts under the statute. That does distinguish the situation under the Wyoming statute from just an offensive touching. That was the real thrust of the Johnson decision by the Supreme Court, wasn't it, that violent force does not include mere offensive touching, where there's no pain, certainly no impairment of bodily function. So we have eliminated that. The question is where we fit in between, and unfortunately you're not, you weren't familiar with the footnote. The footnote, because that, I thought, answered the question, but maybe not. Well, I'll take a look at it when I sit down again. I don't think it does, though, for the reasons I said, in that there is a difference between the Wyoming statute, which is much broader than the Tennessee statute, which has greater specificity, and again, as I recall, actually talks about impairment even with respect to bodily organs and members and things like that. But I will double-check that when I sit down to be sure. Even if that's so, I think impairment, I don't think that footnote would answer the impairment question either. Impairment still might be even more minimal than what's contemplated in that Tennessee statute. And I think that, you know, ultimately, you're right, Your Honor, right? The question is sort of does offensive touching count? Offensive touching does not count, and everything else does? Or is there, as we've argued and as the Fifth Circuit held this summer, is there offensive touching doesn't count? Serious bodily injury is going to count, and there is this gray zone that may count depending on the state, and we simply apply the categorical approach. I don't think there's anything, again, unusual about that. And I think that, again, I think with impairment, everything is the language of the statute, I think, answers it. And it's not a — I think it's fair to say that it's a realistic probability and not a theoretical possibility if the State Supreme Court has said that any level of impairment could be satisfied by the statute. It doesn't matter. They point out — I'm sorry. I've got my light here. Hello. They point out — can you hear me? — that Wyoming has never sustained a conviction that they could find based on some of the types of examples that you gave that could be impairment of a condition, I think you mentioned shining the flashlight in the officer's eyes or the — you know, setting off a stink bomb, that sort of thing. There's never been a case and — It doesn't — — how do you respond to that? It doesn't matter at all for our position. With respect to impairment, the government's approach is to simply read those words out of the statute. It's to say there's no published Wyoming Supreme Court decision that interprets impairment factually, so we'll just ignore that part of the statute. That's not really what we do, right? We give the words meaning to the statute. The Wyoming Supreme Court has said in those cases where they talk about de minimis pain and injury impairment, they include all portions of that definition. So I think they have spoken on that. And again, it's a fundamental principle of the categorical approach and federalism generally, right? But we take the State Supreme Court at their word. The other issue, and particularly with respect to pain, again, I think it's true, right? I don't disagree with the government's recitation of the factual facts underpinning those State cases, right? They tend to involve significant degrees of force. But it doesn't matter for our position because we have clear statements from the Wyoming Supreme Court that less still counts. And I think that's a really helpful contrast is this Court's decision in Garcia, which is cited in the briefs, where the New Mexico State courts had suggested that anything counts, but when the rubber actually hit the road, right, they actually reversed numerous convictions that had been predicated on small degrees of force there. We don't have anything like that. There's no contraindication. If there's no further questions, I'll reserve the balance of my time and take a look at that footnote, Your Honor. May it please the Court, Counsel. My name is Jason Condor. I'm an assistant United States attorney out of Lander, Wyoming. I apologize in advance if I start coughing more than I talk. I caught a bug driving down last night, so I'll suck on some water and cough drops. Your Honors, since the Supreme Court decided Johnson in 2015, the issue of what is a crime of violence has seemingly become unmoored from reality. We are now asked to discuss and debate whether something only seemingly possible in a Saturday morning cartoon, namely flashlight beams and stink bomb scent in the nose of an officer counts as felony interference with a peace officer. But fortunately, Your Honors, the accepted precedent and dictates of this Court and the Supreme Court indicate we do not need to go down that rabbit hole. Those are theoretical possibilities, not realistic probabilities. The real and only question here is, is the minimum degree of force required under the Wyoming assault on a peace officer statute, the felony assault, does that satisfy physical force? That is, does it cause physical injury, pain, something akin to a slap in the face? And the answer here is a resounding yes. The Wyoming Supreme Court has repeatedly stated what degree of force is required. And it's stated that it comes in the form of kicking, punching, elbowing, kneeing, choking, shoving, headbutting, or threats with a dangerous weapon, including a car and a gun. This is not de minimis contact. This is not mere touching that Johnson was talking about. This is physical force. This is violent force. As this Court well knows, under the guidelines, a crime of violence is one that has as an element attempted use or threatened use of physical force. It seems easy enough. And the Supreme Court well-settled precedent said that physical force means violent force. That's force capable of causing physical pain or injury to another person, such as a slap in the face. Thus, Johnson, in 2010, standing alone, does not require an adjective of violent to be anything more than pain or injury akin to a slap in the face. It need not be, as the defendant suggests, debilitating pain, extreme, severe, traumatic. It just needs to be physical. There needs to be pain or injury akin to a slap in the face. The Court said that plain enough. And it has been determined by this Court and others that this standard is not a high hurdle, not nearly as high as the defendant suggests. In Castleman, as Judge Hartz noted, Justice Scalia's concurring opinion outlined a host of other examples of violent force. That included hitting, slapping, shoving, grabbing, punching, or pinching, biting, and hair pulling. And this is not your ordinary concurrence. First of all, it was Justice Scalia who wrote the Johnson opinion. So courts have given it extra weight. And this Court has done so in Harris and in Garcia. In Harris, this Court outlined Justice Scalia's examples and then said, with that example of physical force in mind, we now turn to the issue at hand. Other courts? Well, focus on this statute, this Wyoming statute. In the minimum, I think the minimum culpable conduct is the impairment of physical condition. Correct? That is one of the definitions, Your Honor. Well, yeah. So that's the minimum culpable conduct, right? That is correct, Your Honor, under the statute. And I guess, you know, I'm like looking at that Fifth Circuit's Burris case, I think, the appellant sides. I mean, that's minimum culpable conduct. I don't see where you're getting that. But as the Burris court specifically said, it impairs a physical condition with no or minimal pain. And I think that's the same with this statute. The language is identical. You don't have to have any pain at all. It impairs a physical condition. It's something very, very minor. And the statute's so specific, I don't see how we can make it something greater than that. I would agree, Your Honor, that the language of the statute says physical pain, impairment of a bodily condition, or an illness. Physical pain, illness, or any impairment of a physical condition is the definition. That is correct, Your Honor. Or bodily injury. Any impairment of a physical condition. And that is what it says, Your Honor. And I would note that this court and all courts, when they go through the categorical approach, they look to what is the minimum conduct required. And to do that, we just don't look at the statute in isolation. Because if we did, the United States can cite more cases with identical language from the 7th, 11th, and 8th Circuit, where those courts have said, that language, exact same language. Any illness, any impairment, that's good to go. That's categorically a crime of violence. So we're left in a conundrum of, do we just make it up? Or should we look to see what the Wyoming Supreme Court actually says happens? And so when you read through it. Well, the statute's very specific. So I don't know why we would need to look to. And the fact is, there aren't any cases like this, like the ones that he suggests, you know, the possible lowest level of impairment. But why does that matter when the statute suggests that that's covered? Your Honor, twofold I would echo, I believe it was maybe one of the cases cited in the governance brief, I can't remember, but it said an impairment is synonymous with injury. And I think it's a million dollar question. This, again, is a felony assault on a peace officer. That impairment is synonymous with injury. That we look to the state court cases, and we do this in all of the cases, all of the circuits now, we are all going through this exercise of, what do these statutory terms mean? Because if they all meant what they said, it would be an easy thing. If we could all agree what it meant, we wouldn't be here. And so we look to what the Wyoming Supreme Court said. In those cases, they talk about kicking, punching, biting. There's no flashlight. There's no gazer beams. There's no stink bomb scent. This court, in the decision in DeVries, in that case the defendant argued that the Wyoming assault, aggravated assault with a dangerous weapon statute could be satisfied with weaponized bees. And this court said, look, yeah, that's maybe possible, that a weaponized bee could be a dangerous weapon or a poison even. Judge Lucero stated that. But come on. I'm looking through all the Wyoming cases, and there's no weaponized bees. There's no surreptitious poisoning by a poisonous steak like Cleopatra. We're not going to go down that road. Well, this may be a little different than that. I mean, I think the statute here, to me, is just so very clear when it says physical pain, illness, or impairment of a physical condition. And why would we look at all these hypotheticals if the statute is clear? I would argue that the statute, I would hate to say it, but the statute is not clear in the sense that I don't think a reasonable Wyoming prosecutor, judge of the Wyoming Supreme Court would think that flashlight beams in an officer's eyes is an impairment, any impairment of a, that yes, it technically fits. But it's not what they're talking about. Same thing, we're having this whole discussion here. What is a crime of violence? So in the terms of a violent felony under Johnson 2010, it has to be more than a de minimis touch. Under Castleman, it essentially can be any crime of domestic violence. So we're in this weird world where words don't mean what they seemingly mean. And this is where, I would hate to say it, but where the people on the street look at lawyers and go, what are you guys talking about? And so, Your Honor, I can't exactly answer that question other than to say that I don't think it is clear that any impairment of a physical condition, it could be extended to the extreme. And we could walk through the statute books and do all of that. But the framework that this court has established is we look at the minimum conduct required by statute. In order to help us determine that, we look, what are the elements of the offense? Dictionary definition looks one way. But when we look and see, what does Wyoming actually do? What does this statute actually mean in practice? The Wyoming Supreme Court has shown us that it means punching, elbowing, kneeing, kicking, threatening with a weapon. It's not flashlights and stink bombs. But I understand your concern, Your Honor. And it is there. Very specific. But, Your Honor, I would say that that's... Impairment of a physical condition. If somebody's, well, setting off a stink bomb is one example. I mean, it doesn't seem all that outrageous to me, you know. Or maybe spraying the officer with something in his eyes so that, you know, it impairs his eyesight. It impairs his physical condition. But what about that? Well, I think that would be different, Your Honor. I think when we start to get into these exaggerated extremes, and I would... I don't know that that's that exaggerated. I guess that's what I'm saying. I'm not sure it is. I think spraying something in an officer's eyes is not. And I think the Seventh Circuit and Jennings and some of those cases addressed it, where an inmate threw urine in an officer's face. And the defendant said, oh, that doesn't hurt. That's just an impairment. Big deal. You got urine thrown in your face. And the court said, that burned. That hurt. That's physical contact. That's more than a diminutive touch. And in this case, Your Honor, I would argue if somebody actually sprayed an officer in the face with something, that could, depending on what that substance was, that definitely could be an impairment that this statute covers. But merely shining a flashlight beam that causes the eyes to dilate or not, or a stink bomb, I mean, we're going to have to bring a doctor in to determine, does that even impair a physical condition? I don't know that it does. I mean, a stink bomb goes off in here and we smell it. Am I really impaired or is it just covering it up? I mean, and what does that mean, imperative? If a defendant talks really quietly when an officer said, what's your name? He's just, maybe he's, does that count as impairing his hearing? I don't think it's going to go to that extreme. Your Honor, I don't think this court needs to go out. It's, the Burris Court is not the only one out there. So the Burris Court, the defendant cites it, and it stands for exactly what the defendant says it does. But the United States would advocate this court to read and adopt the Burris dissent. And in dissent, I think it's Justice, or Judge Ho said, look, this decision goes against decisions in at least six other circuits. It goes against all these other circuits that talk about if a slap in the face is enough, then all we need is more than a de minimis touch. That we have now created, the Burris dissent said, we have created a conflict. If this court looks to the Eighth Circuit in Jones, that was a Wisconsin statute battery of a police officer. Exact same language we have here. The court said, that's fine, categorically a crime of violence. The Seventh Circuit in Jennings, the court there said, look, the defendant's trying to set the bar higher than de minimis force, or higher than mere physical pain and injury. It's not any higher. It's akin to a slap in the face, physical pain or injury. And again, the Seventh Circuit in Jennings was looking at the same kind of language. Bodily harm, impairment of a physical condition. The Seventh Circuit in Yates, Judge Easterbrook said, that all Johnson 2010 required was more than de minimis force. All it takes is physical pain, physical injury. In the cases recently cited in the United States 28J letter, the Duncan case, again out of the Seventh Circuit, said, look, when we were talking in Flores versus Ashcroft, and the Supreme Court in Johnson 2010, they weren't saying severe and extreme bodily injury. It's just physical pain and injury. It can be minor. The Eleventh Circuit in Cologne, it said all that's needed is a poking or shoving. And that was the case, Your Honor, that said that impairment of a physical condition is synonymous with injury. And that's how the Eleventh Circuit interpreted that. And so that's what the United States would argue, that it means essentially the same thing. It's a different way of skinning the same cat. It's just a different way of, I would call it a scrivener saying the same thing twice. Last will and testament. Physical pain, harm, impairment of a physical condition. The Seventh Circuit in Manzillas, if I said that right, again said if you put a blanket over somebody's face for 15 seconds, that counts, that a mere slap is enough. Although unpublished, the Fourth Circuit in Bowles said essentially what Judge O'Brien did in the Garcia case in this court. And that is this, that if a slap in the face is sufficient force for physical pain or injury, then certainly pushing or shoving someone to deprive them of their property, to rip that away, constitutes requisite physical force. Your Honor, the point of all these examples is that if we accept Johnson 2010 for what it says, and this court for what it said in Harris and Garcia and adopted by the Seventh Circuit in Jennings, then the Wyoming statute, as it's been interpreted by the Wyoming Supreme Court to mean kicking, punching, kneeing, elbowing, threatening with a weapon, getting hit by a car, then the Wyoming felony assault on a peace officer certainly counts as an elements-clause crime of violence. And so, Your Honor, if there's no further questions, the United States would simply ask the Court to affirm the defendant's sentence imposed in this case. Thank you, Your Honor. Just a few quick points. The one thing, I guess, that the government and I agree on is that there is a split at this point, I think, between the circuits. Right? The Fifth Circuit and the Seventh Circuit have a different view of this argument about the quantum of injury that is contemplated under Curtis Johnson. So I think that's the only meaningful addition that its 28-J letter that it filed yesterday afternoon adds. I will file a response tomorrow. But that's really the only takeaway, I think, from that. With respect to the footnote, Your Honor, it's from Garcia, not Harris, which is why I think it was not thinking of it. The — I went back and looked at that. You're right that it did refer — did describe Justice Scalia's concurrence as persuasive. It did so, though, with respect to his position on the quantum of force, which is different than the injury, necessarily. Just because violent force — just because you can't have violent force without bodily injury doesn't mean that you can't have bodily injury that hasn't been caused by violent force. And so I think — and I stand by my point that the Tennessee statute is different than the one that is at issue here. I went back and looked at that as well. And it does have more specificity with respect to the specific types of injury as well as what has to be impaired. Followed by general language, such as illness or physical — or temporary physical impairment. Yeah. Temporary impairment of bodily functions. Bodily functions. With — yeah. It has the specifics, but then it has the more general. Yeah. And I don't read — And if you were arguing the Tennessee case, you would say the more general language allows less force. Perhaps I'm not arguing that one, obviously. But to the extent that the — I don't read Garcia's footnote, I guess, as going to the Tennessee case. I read it only going to the quantum of force, the hitting, the punching, that that might be enough. But I don't think at the end of the day that even that footnote necessarily stands in our way, particularly given the de minimis level that's contemplated by the statute here as well as the impairment. And so I would simply ask the Court to reverse re-sentencing. Thank you. Thank you, counsel. The case is submitted. Counsel are excused. We'll turn now to our second case for today.